1  Timothy P. Dillon, SBN 190839
   Sunjina K. Ahuja, SBN 226130
2  Dillon & Gerardi, APC
   4660 La Jolla Village Drive, Suite 775
3  San Diego, CA 92122
   Telephone: (858) 587-1800
4  Facsimile: (858) 587-2587

5

6  Attorneys for Plaintiff, Guillermo Arriaga

7

FILED

2007 FEB -1  PM 3: 42

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  GUILLERMO ARRIAGA, an individual;      )   Case No.: '07CV 0217   LAB NLS
                                            )
12       Plaintiff,                         )   COMPLAINT FOR:
                                            )
13  vs.                                     )   1)  BREACH OF CONTRACT
                                            )   2)  CONSTRUCTION AND DESIGN
14  ORGIL INTERNATIONAL                     )       DEFECTS
    GREENHOUSES CORP., a California         )   3)  INTENTIONAL
15  corporation; ORGIL GLOBAL TRADING       )       MISREPRESENTATION
    CORP., a California corporation;        )   4)  FRAUDULENT CONCEALMENT
16                                          )   5)  BREACH OF EXPRESS
    Defendants.                             )       WARRANTY OF
17                                          )       MERCHANTABILITY
                                            )   6)  BREACH OF IMPLIED
18                                          )       WARRANTY OF
                                            )       MERCHANTABILITY
19                                          )   7)  NEGLIGENCE
                                            )   8)  STRICT LIABILITY
20                                          )
                                            )   Jury Trial Demanded
21                                          )
22  _____)

23

24       NOW COMES Plaintiff, Guillermo Arriaga ("Arriaga"), an individual, for his Complaint

25  against Defendants, alleging the following:

26                              PARTIES AND VENUE

27       1.    Plaintiff, Arriaga, is now and, at all times mentioned herein, was an individual residing

28  in the Country of Mexico, in the City of Tijuana.

                                      1
                                  COMPLAINT



2.      Defendant, Orgil International Greenhouses Corp. ("Orgil Corp."), is now and, at all times mentioned herein, was a corporation formed and existing under the laws of the State of California and has its principal place of business in the County of San Diego, State of California at 8110 Avenida De La Fuente, Suite 4, San Diego, California 92154.

3.      Defendant, Orgil Global Trading Corp. ("Orgil Trading"), is a corporation duly organized under the laws of the State of California and has its principal place of business in the County of San Diego, State of California at 1490 Air Wing Road, San Diego, California 92154. Defendants, Orgil Corp. and Orgil Trading shall collectively be referred to as "Defendants" or "Orgil".

4.      Venue is proper in this case because Defendants were required to perform a portion of their contract with Plaintiff in this jurisdiction, Plaintiff performed a portion of his obligations under his agreement with Defendants in this jurisdiction, payment under the contract was to be made in this jurisdiction, the contract was in part negotiated in this jurisdiction and the contract contains a forum selection clause setting forth California as the exclusive State of jurisdiction.

5.      Plaintiff hereby demands a jury trial.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this Complaint pursuant to U.S.C. §1332, because there is complete diversity.  Plaintiff is a citizen of the Country of Mexico, while Defendants are citizens of the State of California.

7.      The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

## GENERAL ALLEGATIONS

8.      Defendant, Orgil is an international manufacturer, developer and exporter of agricultural greenhouses.   Plaintiff, Arriaga is a cultivator of Persian cucumbers who was interested in purchasing three of Orgil's greenhouses to be used in the Valle de la Palmas located in Tecate, Baja California, Mexico.

///

///

///

**Negotiation of Contract**

9.      In January of 2003, Plaintiff and Amos Tichauer ("Tichauer"), Orgil's Corporate Vice President, entered into negotiations concerning Plaintiff's purchase of the three greenhouses. During these negotiations, Tichauer and other Orgil employees made several verbal representations, and provided Arriaga with brochures and documentation containing false and misleading statements. The following were amongst the statements made by Tichauer, a representative and/or agent of Defendants:

        a)      That Defendants would provide all necessary technical supervision and guidance for the construction of the three greenhouses;

        b)      That the climate, weather conditions and terrain of Valle de Las Palmas was conducive to the successful cultivation of Persian cucumbers via the use of the ADI model greenhouses;

        c)      That the ADI model greenhouses, were "turnkey structures" that would be ready for use by or before October 2003;

        d)      That the greenhouses were highly resistant to wind, rain, humidity, insects and the outside elements;

        e)      That the greenhouses would yield $83,900 per greenhouse, per season;

        f)      That there would be, at a minimum, three growing seasons per year;

        g)      The greenhouses would be well ventilated to reduce the temperature during the summer season; and

        h)      That the heating system installed within the greenhouses would be capable of maintaining the requisite minimum temperature for growing crops during the winter season cost effectively.

10.      Tichauer personally chose the ADI model greenhouses as the most suitable for Arriaga, stating that it was the proper choice for the climate in the area. Defendants' website and brochures state the following regarding the ADI greenhouses:

**Adi Greenhouses**
The Adi Greenhouse is designed to address ventilation problems caused by very hot

climates and is especially suited for desert conditions. The ventilation problem is solved by an opening situated in the side of each arch running the entire length of the roof. The Adi Greenhouse is built with a slanting arched roof. One side is 150 centimeters higher than the other, allowing the creation of a ventilation opening in the panel between the roofing elements. **Above and below the ventilation opening are two gutters. The lower gutter is larger and is designed to collect most of the rain water, while the upper one prevents water from entering the greenhouse through ventilation openings. This quick and easily assembled structure is sturdily constructed of dip bath galvanized pipes or profiles, dip bath galvanized steel gutters and zinc ferrous coated bolts that help maintain the structural integrity for many years.**

11.     The parties agreed that Defendants would provide all equipment, training and technical supervision for the installation and use of the greenhouses, while Plaintiff would provide laborers to assist in the assembly of the greenhouses.

12.     The parties understood (and agreed) that the greenhouses would be fully functional on or before October 1, 2003 so that Plaintiff could take advantage of the profitable winter season when cucumbers reached their highest prices in the Southern California market.

13.     As part of Defendants' efforts to induce Plaintiff to purchase greenhouses, Defendants provided Arriaga with a "feasibility study" setting forth the profits he would yield each season. This feasibility study anticipated Arriaga growing bell peppers, a less profitable crop than Persian cucumbers. The study specifically represented that Arriaga would be able to obtain $83,900 of revenue per greenhouse per season.

14.     Arriaga is informed and believes and thereon alleges that Defendants conducted a study of the weather conditions for the Valle de Las Palmas area that revealed the climate was not conducive to the cultivation of crops via use of the greenhouses. The Valle de Las Palmas location experiences severe weather conditions – extreme heat in the summer and extreme cold and rain in the winter.

15.     Despite its knowledge of these weather conditions, Defendants failed to provide Plaintiff with this information and continued to represent that the ADI greenhouses would be suitable for the Valle de Las Palmas area.

16.     On January 31, 2003, Gil Ron Tugerman ("Tugerman"), General Manager of Orgil, delivered a quote of $892,577.30 for the purchase, installation and training in use of the three ADI

greenhouses.  The contract was for a combination of delivery of goods and services.  Defendants were to deliver all parts for the greenhouses as well as provide Plaintiff with assistance, training and supervision in constructing the greenhouses and in use of the greenhouses.

17.     On January 31, 2003, Plaintiff entered into a written contract for the purchase of the greenhouses with Orgil (the "Agreement").  Pursuant to the terms of the contract, Defendants were obligated to deliver and supervise the development of fully functional greenhouses no later than October 1, 2003.

### Orgil's Breach of Contract

18.     On March 20, 2003, Orgil began to ship portions of the three ADI greenhouses to Valle de Las Palmas.  Parts arrived sporadically over the next several months, however, Arriaga later discovered that several key parts were never delivered or were delivered months after October 2003. In or around the Spring of 2003, the Defendants also sent out a technician to oversee and supervise the construction and installation of the greenhouses. The initial technician sent by Defendants to supervise the construction of the greenhouses abandoned the project in June of 2003, before the framing was completed for all three greenhouses.  Not only did Defendants abandon Plaintiff's project, they hired away one of Plaintiff's key employees.

19.     After several phone calls, Defendants sent a second technician to supervise the construction. The second technician failed to provide any supervision.  This technician was severely distraught over his recent breakup with his wife and spent most of his time locked in his car intoxicated and did not provide any supervision or training to Arriaga or his laborers.  Plaintiff complained to Defendants several times regarding the lack of supervision – no assistance was ever provided.

///
///
///
///
///
///

20.     In addition to the lack of supervision, Plaintiff was unable to complete the construction of the greenhouses by October 2003 because Defendants failed to deliver several key parts and further failed to provide the promised supervision.  Corner hinges were not provided until nearly 18 months after the contract had been negotiated.  Certain metal parts and framing were never provided to Arriaga.  The lack of corner hinges and parts prevented Plaintiff from properly installing the polyethylene covering over the metal frame.   The improper installation of the polyethylene contributed to the material tearing and deteriorating.

21.     Despite Plaintiff's repeated requests for assistance, he was left with no technician, no manuals, no blueprints and no instructions on how to properly construct the greenhouses.  In an attempt to mitigate his damages, Plaintiff endeavored to complete the construction of the greenhouses himself.  He used whatever framing had already been constructed as a model for the construction of the remainder.  Plaintiff was left with no guidance on how to attach the exterior sheeting to the framework.

22.     Because Plaintiff is not an expert in greenhouse construction and design, he was not at first aware of the defective design and construction of the greenhouses.   The defects in the greenhouses became apparent several months later.

23.     Due to the defective design of the greenhouses, the lack of supervision in construction of the greenhouses, the lack of training in use of the greenhouses and the tardy delivery of key portions of the greenhouses, Plaintiff's greenhouses were and are deficient and unsuitable for the cultivation of crops.

24.     The defects in Plaintiff's greenhouses include:

a)      The polyethylene joint in the upper part of the dome-windows was inserted upside down, such that it actually encourages (rather then inhibits) the entry of water into the greenhouse.  These joints were installed defectively in the first two greenhouses under the direction of Defendants' technician.

b)      The front sections of the greenhouses are deformed due to faulty construction.  There is a key piece of cable missing (that was never delivered to Plaintiff) that would have reduced the load of the front sections.  This defective structure was constructed in the first two greenhouses by

1    the initial technician sent by Defendants.  Additionally, the defective construction is directly due to

2    Defendants' failure to deliver the missing wire or cable.

3              c)      The doors to the greenhouses are defective.  They do not create a proper seal and

4    are made of inferior material that is far too weak for wind and moderate use.  Later models of the ADI

5    greenhouse have double sliding doors that protect against insects and the elements.  Plaintiff has only

6    one set of doors that open outward on hinges.  Each door has two hinges that have twisted and broken

7    on the frame several times, exposing the greenhouses to wind, rain, cold, heat and insects.  Even when

8    working, these doors failed to create an adequate seal to the elements.

9              d)      The system that secures the polyethylene to the frame was defective, in that the

10   polyethylene sheeting was attached directly against the metal framework or concrete footings.  This has

11   lead to the deterioration of the plastic, reducing its useful life and causing it to fall off.  Also, the

12   sheeting was not able to be properly mounted to the framework so that it would be adequately taut.

13   Because of these problems, substantial parts of the polyethylene cover have torn, exposing the interior

14   to the elements and insects.

15             e)      Steel components of the frame were welded together by Defendants.   This

16   welding has deteriorated the galvanized metal, exposed the metal to rust and corrosion which has

17   impacted the useful life of the greenhouses.  Additionally, the welded areas do not have any protective

18   cover which further causes their deterioration.

19             f)      The greenhouses fail to prevent rain from entering.  During rain storms, large

20   amounts of water pour into the greenhouses.  The uncontrolled entry of water increases humidity and

21   dampness which, in turn, cause crop destruction, disease and fungus.  The failure of the greenhouses to

22   prevent the entry of water has also caused significant problems with shorting of the heating system,

23   causing the heating system to frequently shut off during the rain.

24             g)      The greenhouses are not capable of remaining cool during the summer months

25   with the ventilation system recommended by Defendants.  Plaintiff has measured temperatures inside

26   the greenhouses as high as 138 degrees Fahrenheit.

27             h)      The heating system has multiple problems (over and above shorting out during

28   rain storms).  The heaters were not properly installed and cannot generate sufficiently heat to maintain

1  Plaintiff's crops at the appropriate temperature.  Also, because of the numerous problems with
2  maintaining an adequate seal to the outside, any heat generate quickly dissipates to the outside.
3  Plaintiff spent over $200,000 in propane during a single winter in an effort to keep his crops alive.

4        i)      The rails to open curtains to the outside are inadequate.  They are too weak to
5  support the daily opening and closing of these curtains to the outside and they rub on the plastic
6  sheeting in such a way as to cause wear and tearing.

7        j)      The exterior plastic sheeting and mesh screen tears due to the direct contact with
8  metal.  This allows insects, wind and rain to enter the greenhouse and damage the crops.

9      25.     Plaintiff complained numerous times to Defendants regarding the defects in the
10  greenhouses.  Plaintiff provided Defendants with several opportunities to cure these problems.  On
11  two occasions, Defendants sent technicians to the site to repair damage to the greenhouses.  The
12  attempts at repair were inadequate and, in several instances, actually caused more damage.

13      26.     In one instance, Defendants' technician applied a red "builder glue" directly on top of
14  the polyethylene rather than repair the problem with the polyethylene directly contacting the metal
15  frame.  This process did not repair the damages and actually caused the further deterioration and
16  tearing because Polyethylene should never be glued in that manner to prevent curling and tearing.  In
17  an attempt to repair the ripping mesh material, Defendants installed new mesh material, however,
18  they bolted it directly to the metal frame, which caused numerous rips and tears at every penetration
19  where the bolts went through the material or where the material is in direct contact with the metal
20  framework.

21      27.     The greenhouses have not functioned as promised and Defendants have failed to
22  perform their promised services and timely deliver key parts of the greenhouses.  As a result of
23  Defendant's breach of the Agreement, Plaintiff has been unable to realize a single profitable season
24  of crops.  Due to the exposure to the elements (extreme heat in summer and cold in winter) as well as
25  greenhouses' failure to prevent water from entering (which have resulted in crops diseased with
26  fungus and nematodes), the yields have been far below the expectations of Plaintiff or the
27  representations of Defendants.

28      28.     After several failed seasons that have caused financial ruin for Plaintiff, he has been

forced to lease out the greenhouses to another farmer in an effort to mitigate his damages. Due to the sub-lessee's problems with the greenhouses, the new farmer has been unable to make his lease payments, to the further damage of Plaintiff.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

### (Plaintiff v. All Defendants)

29.   Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full herein.

30.   On or about January 1, 2003, Plaintiff entered into the Agreement with Defendants, whereby Defendants were to design, deliver, construct and install three greenhouses on Plaintiff's property in Valle de la Palmas located in Tecate, Baja California, Mexico on or before October 1, 2003. Defendants were also obligated to train Arriaga and his employees in the efficient use of the greenhouses.

31.   Plaintiff performed all of its obligations under the Agreement.

32.   Defendants breached the Agreement by designing, constructing and installing greenhouses that were defective for their intended purpose of Persian cucumber production. Defendants also failed to honor their obligations and did not provide Arriaga with all promised goods in a timely manner (or at all), and failed to provide supervision or training necessary to build, maintain and operate the greenhouses. In particular, the three greenhouses failed to have proper heating, proper plastics, proper resistance to wind, rain and the elements, proper doors, proper ventilation and proper cable systems which would allow for the opening and closing of the greenhouse curtains. Additionally, the greenhouses were not delivered, constructed or useable on or before October 1, 2003. Because Plaintiff was not an expert in greenhouse construction and design, he was not aware of the defects in the greenhouses until several months later.

33.   The failure to timely deliver on the contract and the design, construction and installation defects constitute a breach of the Agreement and resulted in damages to Plaintiff in an amount to be proven at trial but in excess of the jurisdictional minimum.

///

## SECOND CAUSE OF ACTION

## CONSTRUCTION AND DESIGN DEFECT

### (Plaintiff v. All Defendants)

34.    Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full herein.

35.    Defendants designed, constructed and inadequately assisted in the installation of the three greenhouses purchased by Plaintiff.   Because Plaintiff is not an expert in greenhouse construction and design he was not aware that the greenhouses were defective until several months after he had received the greenhouse parts.

36.    The greenhouses were negligently designed by Defendants as fully described above and incorporated herein by reference.  In particular, the greenhouse had a defective heating system, improper plastics, improper resistance to wind, rain and the elements, improper doors, improper ventilation and improper cable systems which would allow for the opening and closing of the greenhouse curtains.  The design and construction of the greenhouses has directly and proximately caused damage to Plaintiffs in the form of crop reduction, crop damage, property damage, increase operating costs, increased labor costs and increased material costs.

37.    Defendants were required to design and install the greenhouses in compliance with generally accepted greenhouse design and construction standards.  Those standards would have required the heating system, door design, plastic specifications and cable specifications to work properly for the growing of Persian cucumbers in Tecate, Mexico.

38.    Plaintiffs are informed and believe, and on that basis allege, that Defendants' design and construction of the greenhouses was defective in that it, among other things, failed to adhere to standard engineering/construction practices applicable to design and installation of greenhouses for use in growing Persian cucumbers in Tecate, Mexico.

39.    Defendants had a duty to Plaintiffs to design and construct and install greenhouses which could be properly used for use in growing Persian cucumbers in Tecate, Mexico.

40.    Defendants breached their duty to Plaintiffs by designing and constructing the greenhouses that caused damage to Plaintiff, increased operating expenses, materials and labor and

1 | impeded the growth of Persian cucumbers.

2 |     41.    Defendants' breach of duty to Plaintiff was the direct and proximate cause of damage

3 | to Plaintiff.

4 | ### THIRD CAUSE OF ACTION

5 | ### INTENTIONAL MISREPRESENTATION

6 | **(Plaintiff v. All Defendants)**

7 |     42.    Plaintiff hereby incorporates each and every preceding paragraph as though set forth in

8 | full herein.

9 |     43.    Prior to Plaintiff entering into the Agreement on January 31, 2003. Defendants falsely

10 | represented material facts regarding the greenhouses.   Defendants made the following false

11 | representations:

12 |     a)    That Defendants would provide all necessary technical supervision and

13 | guidance for the construction of the three greenhouses;

14 |     b)    That Defendants would provide training to Plaintiff and his employees in the

15 | use of the greenhouses;

16 |     c)    That the climate, weather conditions and terrain of Valle de Las Palmas was

17 | conducive to the  successful cultivation of Persian cucumbers via the use of the ADI model

18 | greenhouses;

19 |     d)    That the ADI model greenhouses, were "turnkey structures" that would be

20 | delivered and ready for use;

21 |     e)    That the greenhouses were highly resistant to wind, rain, humidity, insects and

22 | the outside elements;

23 |     f)    That the greenhouses would yield $83,914.68 per greenhouse, per season;

24 |     g)    That there would be, at a minimum,  three growing seasons per year;

25 |     h)    The greenhouses would be well ventilated to reduce the temperature during the

26 | summer season; and

27 |     i)    That the heating system installed within the greenhouses would be capable of

28 | maintaining the requisite minimum temperature for growing crops during the winter season cost

effectively.

44.    The falsity of the above facts became known to Plaintiff after several months of attempting to grow his Persian cucumber crops.

45.    Defendants had knowledge of the falsity of the representations contained in paragraphs a-i above.

46.    Defendants intended to deceive Plaintiff regarding the greenhouses and Plaintiff justifiably relied on the false representations.

47.    As a result of Plaintiff's reliance he suffered damages in an amount to be proven at trial but in excess of the jurisdictional minimum.

48.    The aforementioned acts of Defendants were willful, wanton, malicious, fraudulent and oppressive with the intent to cause Plaintiff harm and justify the awarding of exemplary damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

## FRAUDULENT CONCEALMENT

### (Plaintiff v. All Defendants)

49.    Defendants sold, designed and inadequately supervised the construction of greenhouses for Plaintiffs and knew that the greenhouses were not conducive to the cultivation of Persian cucumbers in the climactic conditions of Tecate, Mexico.  Defendants were also aware that the greenhouses had a defective heating system, improper plastics, improper resistance to wind, rain and the elements, improper doors, improper ventilation, improper cable systems which allowing for the opening and closing of the greenhouse curtains, was in general defective and not in compliance with the generally accepted construction standards for greenhouses at the time.

50.    Defendants submitted and contracted for what it knew was a defective design for the Plaintiff's greenhouses.  Defendants concealed from Plaintiff that the greenhouses were defective and not conducive to cultivation of Persian cucumbers in the climactic conditions of Tecate, Mexico.

51.    The defects in the greenhouses and the non-conducive climactic conditions of Tecate, Mexico were material facts the Defendants knew but that were unknown to Plaintiff.

52.    Defendants concealed material facts with the intent and purpose of reducing its

construction and material costs of the greenhouse and increasing its profits on the sale to Plaintiffs.

53.     Defendants had a legal duty to disclose the fact that the greenhouses were defective and were not conducive to the cultivation of Persian cucumbers in Tecate, Mexico.  The duty to disclose material defects in the greenhouses was based on the contractual and confidential relationship between Defendants and Plaintiff.

54.     Plaintiff relied on Defendants, based on their expertise in greenhouse construction, to disclose any material defects in the greenhouse design and to disclose whether the climactic condition of Tecate, Mexico was not conducive to the cultivation of Persian cucumbers via use of the greenhouses.

55.     Plaintiff was justified in relying on Defendants to disclose material facts.  Defendant did not become aware of the concealed facts until he had spent several months attempting to grow his Persian cucumber crop.  Defendants' concealment of material facts was done with an intent to deceive and defraud Plaintiffs.

56.     Defendants' concealment of material facts was the direct and proximate cause of Plaintiffs' damages.  Plaintiff would not have agreed to purchase and construct the greenhouses if Defendants disclosed that the greenhouses were defective and would cause Plaintiff's damage.

57.     The aforementioned acts of Defendants were willful, wanton, malicious, fraudulent and oppressive with the intent to cause Plaintiff harm and justify the awarding of exemplary damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY OF MERCHANTABILITY

**(Plaintiff v. All Defendants)**

58.     Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full herein.

59.     In the January 31, 2003 Agreement, Defendants expressly warranted that the greenhouses would be merchantable and fit for use in the cultivation of Persian cucumbers.

60.     Plaintiffs relied upon the warranty that the greenhouses would be merchantable and fit for their ordinary use in the production of Persian cucumbers.

61.     The warranty of merchantability was breached when Defendants supplied Plaintiff with greenhouses that were defective, improperly designed, improperly installed and failed to work as promised.

62.     As a direct and proximate cause of Defendants' breach of the warranty, Plaintiff has been caused damage in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (Plaintiff v. All Defendants)

63.     Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full herein.

64.     In the January 31, 2003 Agreement, Defendant impliedly warranted that the greenhouses would be merchantable and fit for use in the cultivation of Persian cucumbers.

65.     Plaintiff relied upon the warranty that the greenhouses would be merchantable and fit for their ordinary use in the production of Persian cucumbers.

66.     The warranty of merchantability was breached when Defendants supplied Plaintiff with greenhouses that were defective, improperly designed, improperly installed and failed to work as promised.

67.     As a direct and proximate cause of Defendants' breach of the warranty, Plaintiff has been caused damage in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

## NEGLIGENCE

### (Plaintiff v. All Defendants)

68.     Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full herein.

69.     Defendants and Plaintiff entered into an Agreement for the sale, design, construction and installation of five greenhouses in Tecate, Mexico.

70.     Pursuant to the Agreement, Defendants agreed to supply Plaintiff with three greenhouses for use in the production of Persian cucumbers.  Based on Defendants' experience,

1    expertise and knowledge of greenhouses, it knew or should have known the greenhouses were

2    defective.  Based on Defendants' experience, expertise and knowledge of greenhouses it knew or

3    should have known the design and construction of the greenhouses would cause property damage,

4    increase operating expenses and decrease production of Persian cucumbers.  Defendants had a duty to

5    inform Plaintiffs of the defective greenhouses.  Defendants failed to do so.

6         71.    Defendants' design of the defective greenhouses was negligent in that any reasonable

7    greenhouse designer/builder would have installed a heating system that would adequately heat the

8    greenhouses.  Defendants' design of the defective greenhouses was negligent in that any reasonable

9    greenhouse designer/builder would have installed plastics that would withstand winds in the

10   geographic are where the greenhouses were being built.  Defendants' design of the defective

11   greenhouses was negligent in that any reasonable greenhouse designer/builder would have installed

12   plastics that were proper for the production of Persian cucumbers.  Defendants' design of the

13   defective greenhouses was negligent in that any reasonable greenhouse designer/builder would have

14   installed operating doors that would withstand the elements.  Defendants' design of the defective

15   greenhouses was negligent in that any reasonable greenhouse designer/builder would have installed

16   operating curtin mechanisms which would allow the greenhouse user to move the curtins as needed.

17   Defendants' design of the defective greenhouses was negligent in that any reasonable greenhouse

18   designer/builder would have installed functioning heating systems.  Defendants' design of the

19   defective greenhouses was negligent in that any reasonable greenhouse designer/builder would have

20   installed functioning draining systems.  Defendants' negligence was the direct and proximate cause of

21   the property damage, increased operating expenses and decreased Persian cucumber production to

22   Plaintiffs.

23                          **EIGHTH CAUSE OF ACTION**

24                          **STRICT LIABILITY**

25        72.    The greenhouse materials and design supplied by Defendants were defective at the

26   time they were provided by Defendants to Plaintiff and made the greenhouses unsafe for use by

27   Plaintiff.  Defendants knew or should have known that as a customer, Plaintiff would rely upon the

28   design and materials and specifications supplied by Defendants.

73.  Plaintiff has been damaged by Defendants provision of defective materials in an amount to be proven at trial but in excess of the jurisdictional minimum.

WHEREFORE, PLAINTIFF prays for relief as follows:

**As to the First Cause of Action**

1.  For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at trial;

2.  For attorneys' fees and costs;

3.  For pre-and post-judgment interest;

4.  For costs of suit; and

5.  For such other and further relief as the Court may deem just.

**As to the Second Cause of Action**

1.  For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at trial;

2.  For attorneys' fees and costs;

3.  For pre-and post-judgment interest;

4.  For costs of suit; and

5.  For such other and further relief as the Court may deem just.

**As to the Third Cause of Action**

1.  For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at trial;

2.  For attorneys' fees and costs;

3.  For pre-and post-judgment interest;

4.  For exemplary and punitive damages;

5.  For attorneys' fees and costs;

6.  For costs of suit; and

7.  For such other and further relief as the Court may deem just.

**As to the Fourth Cause of Action**

1.  For past and future general, incidental and consequential damages in a sum not yet fully

ascertained and according to proof at trial;

2.  For attorneys' fees and costs;

3.  For pre-and post-judgment interest;

4.  For exemplary and punitive damages;

5.  For costs of suit; and

6.  For such other and further relief as the Court may deem just.

**As to the Fifth Cause of Action**

1.  For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at trial;

2.  For attorneys' fees and costs;

3.  For pre-and post-judgment interest;

4.  For costs of suit; and

5.  For such other and further relief as the Court may deem just.

**As to the Sixth Cause of Action**

1.  For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at trial;

2.  For attorneys' fees and costs;

3.  For pre-and post-judgment interest;

4.  For costs of suit; and

5.  For such other and further relief as the Court may deem just.

**As to the Seventh Cause of Action**

1.  For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at trial;

2.  For attorneys' fees and costs;

3.  For pre-and post-judgment interest;

4.  For costs of suit; and

5.  For such other and further relief as the Court may deem just.

///

**<u>As to the Eighth Cause of Action</u>**

1. For past and future general, incidental and consequential damages in a sum not yet fully ascertained and according to proof at trial;

2. For attorneys' fees and costs;

3. For pre-and post-judgment interest;

4. For costs of suit; and

5. For such other and further relief as the Court may deem just.

Dated:  February  1 , 2007

Respectfully Submitted,

Timothy P. Dillon, Esq.,
Attorney for Plaintiff,
Guillermo Arriaga

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

FILED

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| GUILLERMO ARRIAGA, an individual | ORGIL INTERNATIONAL GREENHOUSES CORP., 2007 FEB -1 8:44 a California corporation; ORGIL GLOBAL TRADING CORP., a California corporation CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA |

(b) COUNTY OF RESIDENCE OF FIRST LISTED  Tijuana
PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

BY _____ DEPUTY

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Dillon & Gerardi, APC
4660 La Jolla Village Drive
Suite 775
San DIego, CA 92122 (858)587-1800

ATTORNEYS (IF KNOWN)

'07CV 0217   LAB NLS

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- 2 U.S. Government Defendant
- 3 Federal Question (U.S. Government Not a Party)
- X 4 Diversity (Indicate Citizenship of Parties in Item III

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | • 1 | | Incorporated or Principal Place of Business in This State | • 4 | X |
| Citizen of Another State | • 2 | • 2 | Incorporated and Principal Place of Business in Another State | • 5 | • 5 |
| Citizen or Subject of a Foreign Country | X | • 3 | Foreign Nation | • 6 | • 6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

28 U.S.C. s 1332

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| • 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | • 610 Agriculture | • 422 Appeal 28 USC 158 | • 400 State Reappointment |
| • 120 Marine | • 310 Airplane | • 362 Personal Injury-Medical Malpractice | • 620 Other Food & Drug | • 423 Withdrawal 28 USC 157 | • 410 Antitrust |
| • 130 Miller Act | • 315 Airplane Product Liability | | • 625 Drug Related Seizure of Property 21 USC881 | PROPERTY RIGHTS | • 430 Banks and Banking |
| • 140 Negotiable Instrument | • 320 Assault, Libel & Slander | • 365 Personal Injury - Product Liability | • 630 Liquor Laws | • 820 Copyrights | • 450 Commerce/ICC Rates/etc. |
| • 150 Recovery of Overpayment &Enforcement of Judgment | • 330 Federal Employers' Liability | • 368 Asbestos Personal Injury Product Liability | • 640 RR & Truck | • 830 Patent | • 460 Deportation |
| • 151 Medicare Act | • 340 Marine | PERSONAL PROPERTY | • 650 Airline Regs | • 840 Trademark | • 470 Racketeer Influenced and Corrupt Organizations |
| • 152 Recovery of Defaulted Student Loans (Excl. Veterans) | • 345 Marine Product Liability | • 370 Other Fraud | • 660 Occupational Safety/Health | SOCIAL SECURITY | • 810 Selective Service |
| • 153Recovery of Overpayment of Veterans Benefits | • 350 Motor Vehicle | • 371 Truth in Lending | • 690 Other | • 861 HIA (1395ff) | • 850 Securities/Commodities Exchange |
| • 160 Stockholders Suits | • 355 Motor Vehicle Product Liability | • 380 Other Personal Property Damage | LABOR | • 862 Black Lung (923) | • 875 Customer Challenge 12 USC |
| X 190 Other Contract | • 360 Other Personal Injury | • 385 Property Damage Product Liability | • 710 Fair Labor Standards Act | • 863 DIWC/DIWW (405(g)) | • 891 Agricultural Acts |
| • 195 Contract Product Liability | | | • 720 Labor/Mgmt. Relations | • 864 SSID Title XVI | • 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | • 730 Labor/Mgmt. Reporting & Disclosure Act | • 865 RSI (405(g)) | • 893 Environmental Matters |
| | | | | FEDERAL TAX SUITS | |
| • 210 Land Condemnation | • 441 Voting | • 510 Motions to Vacate Sentence Habeas Corpus | • 740 Railway Labor Act | • 870 Taxes (U.S. Plaintiff or Defendant) | • 894 Energy Allocation Act |
| • 220 Foreclosure | • 442 Employment | • 530 General | • 790 Other Labor Litigation | • 871 IRS - Third Party 26 USC 7609 | • 895 Freedom of Information Act |
| • 230 Rent Lease & Electmant | • 443 Housing/Accommodations | • 535 Death Penalty | • 791 Empl. Ret. Inc. | | • 900 Appeal of Fee Determination Under Equal Access to Justice |
| • 240 Tort to Land | • 444 Welfare | • 540 Mandamus & Other | Security Act | | • 950 Constitutionality of State |
| • 245 Tort Product Liability | • 440 Other Civil Rights | • 550 Civil Rights | | | • 890 Other Statutory Actions |
| • 290 All Other Real Property | | • 555 Prisoner Conditions | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- X 1 Original Proceeding
- • 2 Removal from State Court
- • 3 Remanded from Appellate Court
- • 4 Reinstated or Reopened
- • 5 Transferred from another district (specify)
- • 6 Multidistrict Litigation
- • 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | • CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ In Excess of $75,000.00 | Check YES only if demanded in complaint: JURY DEMAND: X YES • NO |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY (See Instructions): | JUDGE | | Docket Number |
|---|---|---|---|

DATE February 1, 2007

SIGNATURE OF ATTORNEY OF RECORD

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

ORIGINAL

134525  Dep RCT  2/7/07  $350



UNITED STATES
DISTRICT COURT
Southern District of California
San Diego Division

# 134525 - A3
February 1, 2007

| Code | Case # | Qty | Amount |
|------|--------|-----|--------|
| CV084920 | 3-07-CV-0217 | | 60.00 CH |
| Judge | BURNS | | |
| CV086400 | | | 100.00 CH |
| CV610000 | | | 150.00 CH |

Total->                  350.00

FROM: CIVIL FILING
      GUILLERMO ARRIAGA V. ORBIL
      INTN'L GREENHOUSES CORP. ET AL
      BCH 2524  SH